# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

### (Northern Division)

| | |
|---|---|
| TRACEY L. CHALK, | * |
| *on her own behalf and on behalf* | |
| *of all others similarly situated* | * |
| | |
| Plaintiffs | * |
| | CASE NO. 1:11-cv-03052--CCB |
| v. | * |
| | * |
| PNC BANK, NATIONAL ASSOCIATION | |
| | * |
| Defendant | |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS

## Table of Contents

|  |  | Page |
|---|---|---|
| I. | **Introduction** | 1 |
| II. | **Summary of the Well Pled Facts of the Complaint** | 1 |
|  | A.  Introduction | 1 |
|  | B.  Background on Maryland Foreclosure Law | 2 |
|  | C.  Ms. Chalk's Mortgage & PNC's Improper Foreclosure Collection Activities | 2 |
|  | D.  The Void Power of Sale in the Chalk Deed of Trust | 4 |
| III. | **Standard of Review** | 5 |
|  | A.  Fed.R.Civ.P. 12(b)(6) | 5 |
|  | B.  Fed.R.Civ.P. 12(b)(1) | 6 |
|  | C.  Fed.R.Civ.P. 9(b) Pleading with Particularity | 6 |
| IV. | **Argument** | 7 |
|  | A.  Not Satisfied with the Well Pled Allegations of the Complaint, PNC Improperly Presents the Court with a Series of Disputed Facts for Consideration on the Basis of a Motion to Dismiss; These Facts, if supported by evidence, would Necessitate that the Court Consider PNC's Motion Under a Summary Judgment Standard | 8 |
|  | B.  Ms. Chalk's Damage Claims Involve a Material, Mandatory Statutory Requirement Established by the Maryland General Assembly as a Prerequisite to Commencing a Foreclosure Action in the State of Maryland | 11 |
|  | C.  Looking Beyond the Plain Meaning of Md. Ann. Code, Real Prop., § 7-105.1(c) Which It Utterly Ignored, PNC Wishes This Court to Construct a Reading of Md. Rule 14-202(q) Which Would be Unconstitutional | 20 |
|  | D.  The Court of Appeals Has Explained that It is Not the Job of Courts to Administer a Fix to Foreclosure Crisis and It Will Defer to the Legislature | 23 |
|  | E.  PNC Overstates Ms. Chalk's Constitutional Challenge to MD LEGIS 322 (S.B. 562) (2010); S.B. 562 is a Special Law Intended to Do What the State and Federal Constitutions Expressly Prohibit | 24 |
|  | **Argument** (cont.) |  |

**Table of Contents**

**Page**

42

F.   Ms. Chalk has Adequately Stated Statutory Claims Pursuant to Maryland Law

G.   Because Ms. Chalk has Pled Sufficient Legal Claims, She is Entitled to Declaratory and Injunctive Relief     47

H.   Ms. Chalk Has Pled Sufficient Damages to Provide her Constitutional Standing to Pursue Her Damage Claims     47

**V.    Conclusion**     48

**Certificate of Service**     49

**Table of Exhibits**     50

Plaintiff Tracey Chalk, by and thorough her undersigned counsel, does hereby oppose Defendant PNC Bank, National Association's ("PNC") Motion to Dismiss (Doc. 6) and says in opposition:

## I. INTRODUCTION

Presented to the Court as a Motion to Dismiss, PNC has presented to the Court facts and exhibits not supported by the Plaintiff's Complaint (Doc. 1) or even an affidavit based upon personal knowledge as required by Fed.R.Civ.P. 56.   On this basis alone the Court should respectfully deny PNC's motion as premature and not ripe before any discovery is conducted in this matter.   However, should the Court wish to disregard PNC's unsupported version of the disputed facts, Ms. Chalk does believe that she has adequately pled sufficient facts to support her remedial, consumer protection claims under Maryland law involving: (i) PNC's improper debt collection practices through foreclosure actions in violation of Maryland law by failing to identify the interest of the Federal Home Loan Mortgage Corporation ("Freddie Mac") and (ii) the constitutionality of a recent Maryland law to a void provision of Ms. Chalk's Deed of Trust. As a result Ms. Chalk should be permitted to proceed on her claims.

## II. SUMMARY OF THE WELL PLED FACTS OF THE COMPLAINT

*A.     Introduction*

This action is about the improperly filed foreclosure proceedings, or debt collection practices, of the Defendant PNC.  Complaint ("Com.") at ¶ 2.  This action is *not* about whether a debt is owed.  *Id.*  Specifically, PNC has knowingly "omitted and misrepresented statutorily mandated information before commencing the foreclosure action[s]" against "a class of Maryland homeowners."  Com. at ¶ 1.  "Absent this litigation, PNC and its privies will continue

to ignore Maryland law and flood the state courts with hundreds or thousands of foreclosure cases which do not comply with Maryland [law] and which do not have the statutory right to be filed." Com. ¶ 3.

This action also seeks a declaration that MD LEGIS 322 (S.B. 562)(2010) is unconstitutional by attempting to cure a void power of sale in a subclass of Deeds of Trust which did not name an individual as Trustee.  Com. ¶¶ 4, 110

B.      *Background on Maryland Foreclosure Process*

The foreclosure laws in the State of Maryland were substantially changed by the Maryland Legislature in 2008 in emergency legislation changing 200 years of Maryland foreclosure procedure.   Com. ¶ 12.   The legislature imposed specific prerequisites before any owner or secured party of a security instrument could initiate a foreclosure proceeding in Maryland; included in this process was a requirement that a secured party identify itself to homeowners. *Id.*; *see also* MD. CODE ANN., REAL PROP. § 7-105.1(c)(4)(ii)(1)(A).   This new requirement was necessary to give the homeowner the name and contact information of an entity other than their servicer that had the ultimate authority concerning requests related to sustainable loan modifications.  Com. ¶ 13.    All too often mortgage servicers were not responding to homeowner requests or even answering the phones.  *Id.*

C.      *Ms. Chalk's Mortgage & PNC's Improper Foreclosure Collection Activities*

Like many thousands of other homeowners, Ms. Chalk has had difficulty maintaining her mortgage taken out by her former husband. Com. ¶¶ 34, 37.  At some point, Ms. Chalk could not afford the monthly payments and the loan became delinquent.  Com. ¶ 37.

Freddie Mac is the mortgagee or note holder of Ms. Chalk's loan, which is secured by a deed of trust on her home and property.  Com. ¶¶ 19, 23, 38-39, 42-43, 45.   PNC acts as the

servicer and authorized agent of Freddie Mac concerning the Chalk loan loan. Com. ¶¶ 14.  As part of its responsibilities as a servicer of the Chalk loan and those of the putative class members, PNC has directed the filing of hundreds of foreclosure proceedings in the State of Maryland since the Maryland law changed effective April 4, 2008.  Com. ¶ 18.  However, "[t]he foreclosure proceedings are improper because a [Notice of Intent to Foreclose], which complies with Maryland requirements, is never provided to the Mortgagor in hundreds of instances." Com. ¶ 19.  As the mere servicer of the loan, PNC is "not the secured party since it does not own any interest in the property of the mortgagors" and "in fact Freddie Mac is the party who holds an interest in the property."  Com. ¶¶ 22-23.  Included among PNC's duties as servicer was the responsibility for pursuing all actions related to the foreclosure of Ms. Chalk's property upon the Chalk loan default.  Com. ¶¶ 16-17.

To enforce Freddie Mac's rights under Ms. Chalk's deed of trust, PNC also retained and attempted to appoint certain Trustees or Substitute Trustees.  Com. ¶¶ 8-9. 15-16.  However, since "the power to appoint trustees pursuant to Ms. Chalk's Deed of Trust…was void as a matter of law, [PNC] does not have the legal authority to appoint Trustees or Substitute Trustees under the deed of trust." Com. ¶ 16. Before commencing a foreclosure against Ms. Chalk and her home and property, PNC, through its appointed agents, sent Ms. Chalk a Notice of Intent to Foreclose ("NOITF") that failed to identify Freddie Mac as the secured party in violation of Maryland law.  Com. ¶¶ 19, 38-39, 42.  The NOITF sent to Ms. Chalk falsely identified PNC as both the secured party and the servicer of the Chalk loan.  Com. ¶¶ 19-20, 23.

Freddie Mac delivered the Chalk Note "solely as its agent and not to transfer ownership of the note.  Therefore, the delivery of the note does not make the servicer the 'holder' of the note."  Com. ¶ 24.  Further, if the delivery of the note was done with the intent to transfer

ownership of the note to the servicer, the delivery of a note without a specific indorsement only makes the servicer a transferee and not a holder." Com. ¶ 25.

After sending Ms. Chalk the false and misleading NOITF and without the right to do so, PNC initiated a foreclosure action in the Circuit Court for Anne Arundel County, Maryland against Ms. Chalk and her home and property ("*Burson v. Chalk* Action"). Com. ¶ 39.   PNC was represented in the foreclosure proceeding by its substitute trustees. *Id.*   As part of the foreclosure papers filed in the *Burson v. Chalk* Action, PNC actively participated by providing testimony certifying a "true and accurate copy" of the Chalk Note and Freddie Mac's status as the owner of the Chalk . Com. ¶ 40.

Even after its deceptive collection attempt in the *Burson v. Chalk* Action, PNC, through its authorized agents, followed its pattern and sent Ms. Chalk two more NOITF which improperly omitted the identification of Freddie Mac as the secured party for the Chalk loan and falsely represented only PNC as the secured party of the subject loan on August 17, 2011 and October 13, 2011.  Com. ¶¶ 43, 45.  On a telephone call on October 8, 2011, "PNC [also] falsely represented to Ms. Chalk…that it had scheduled a foreclosure sale of her home and property for November 2001.  This representation by PNC was false and misleading in that no new Order to Docket or even a Complaint to Foreclose [had] been filed in any court against her." Com. ¶ 44.

### D.   The Void Power of Sale in the Chalk Deed of Trust

As security for the Chalk Note, "Ms. Chalk signed the Deed of Trust presented to her by National City's representative at the settlement since she was on title to the property (but she was not the original borrower).   The Deed of Trust was recorded in the land records for Anne Arundel County at Book 16351, Page 509 ("National City Deed of Trust") and was already recorded before the effective day of MD LEGIS 322 (S.B. 562)(2010)."  Com. ¶¶ 35, 110.  The

4

National City Deed of Trust is a contract between Ms. Chalk and the lender.  Com. ¶¶ 4, 100, 103.   The National City Deed of Trust named "Lawyers Title Realty Serv Inc. A Cirginia Corp…as trustee on the original Deed of Trust."  Com. ¶ 36.  "Lawyers Title Realty Serv Inc. A Virginia Corp" is not an individual.  *Id.;* Com. ¶ 110.  MD LEGIS 322 (S.B. 562)(2010) was enacted to apply retroactively to a group of defective Deeds of Trust with void appointments as a matter of law and may not therefore be enforced through a power of sale.  Com. ¶ 4, 16, 102, 108, 110.

### III.   STANDARDS OF REVIEW

#### A.   *Fed.R.Civ.P. 12(b)(6) Motion to Dismiss*

The Fourth Circuit has explained, "[t]o survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).  In *Twombly* the Court considered whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face," *Twombly, 550 U.S.* at 570, observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formalistic recitation of the elements of a cause of action will not do." *Id.* at 545.   However, "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,*127 S. Ct. 1955, 1969 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."

*Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal

quotation marks and citations omitted).

A court must also view the factual allegations of the complaint "in the light most

favorable to plaintiff." *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060, 1062 (4th Cir.1984).

But the court is not necessarily bound by the legal conclusions drawn. *Dist. 28, United Mine*

*Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085-86 (4th Cir. 1979).

B.     *Fed.R.Civ.P. 12(b)(1) Motion to Dismiss*

Judge Bennett of this Court recently summarized the standard for a Fed. Rul. Civ. Proc.

12(b)(1) as follows:

> A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal
> Rule of Civil Procedure 12(b)(1) challenges a court's authority to hear the matter
> brought by a complaint. *See Davis v. Thompson,* 367 F.Supp.2d 792, 799
> (D.Md.2005). A plaintiff carries the burden of establishing subject matter
> jurisdiction. *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir.1999). In determining
> whether jurisdiction exists, the district court "is to regard the pleadings'
> allegations as mere evidence on the issue, and may consider evidence outside the
> pleadings without converting the proceeding to one for summary judgment."
> *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765,
> 768–769 (4th Cir.1991). Motions to dismiss for lack of subject matter jurisdiction
> are appropriate where a claim fails to assert facts upon which jurisdiction may be
> based. *See Crosten v. Kamauf,* 932 F.Supp. 676, 679 (D.Md.1996).

*Brown v. Baltimore Police Dept*., CIV.A. RDB-11-00136, 2011 WL 6415366 (D. Md. Dec. 21,

2011).

C.     *Fed.R.Civ.P. 9(b) Pleading with Particularity*

Pleadings are generally required to set forth "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed.R.Civ.P.8(a)(2). In addition each allegation

must be "simple, concise and direct." *Id.* at 8(d)(1). However, when asserting claims based in

6

fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b).  Conversely, statutory consumer protection claims, based on non-fraudulent but unfair or deceptive conduct, are not necessary required to be pled with particularity.  Judge Titus recently explained the limits of the requirement to plead with particularity in the context of remedial, consumer protection statutes [similar to those in this matter] as follows:

> [Defendants] are simply mistaken that Rule 9(b)'s requirement of particularity applies to the other elements of the [Racketeer Influenced and Corrupt Organizations Act] claims (e.g. existence of a conspiracy) *in addition to* the predicate acts of mail and/or wire fraud. *Williams,* 498 F.Supp.2d at 842. For the remaining RICO elements and *the remaining non-RICO claims, Plaintiffs' allegations are construed under the more liberal pleading standard of a "short and plain statement of the claim showing that the pleader is entitled to relief."* Fed.R.Civ.P. 8(a)(2); *see also Baltimore County v. Cigna Healthcare,* 238 Fed.Appx. 914, 921 (4th Cir.2007) (holding that the "notice pleading" standard of Fed.R.Civ.P. 8 applies to allegations of non-fraudulent conduct and thus plaintiff's claim of negligent misrepresentation did not need to be pleaded with particularity under Fed.R.Civ.P. 9(b)). Because the remaining claims in Plaintiffs' complaint do not allege fraudulent conduct (rather, they consist of the other elements of the RICO claims in addition to claims under [Real Estate Settlement Procedures Act], [Protection of Homeowners in Foreclosure Act], and a gross negligence claim), the lower pleading standard applies.

*Proctor v. Metropolitan Money Store Corp.,* 645 F.Supp.2d 464, 476 (D.Md.,2009) (emphasis added).

## IV.   ARGUMENT

In a broad attack against Ms. Chalks's claims, PNC makes the following arguments generally:

(i)     PNC makes a series of factual allegations, not supported either by the well pled facts of Ms. Chalk's complaint or any other evidence before the Court, and believes its version of the facts therefore require dismissal of the complaint;

(ii)    PNC generally argues that the Maryland Rules established by the judicial branch of state government, trump and supersede the legislative mandate of the Maryland General Assembly;

(iii)   Attempting to reform Ms. Chalk's constitutional claims to something beyond what Ms. Chalk actually is seeking, PNC argues a legal position not even before the Court; and

(iv)    Attaching a copy of the alleged Note,[1] PNC argues with no evidence properly before the Court that it is the "holder" entitled to enforce all rights under it.

Despite Defendant's overreaching arguments, at this stage of the proceedings, Ms. Chalk believes Defendant's arguments are unfounded and not supported by (i) the well pled factual allegations of the Complaint and (ii) Maryland and federal constitutional and statutory law.

A.   *Not Satisfied with the Well Pled Allegations of the Complaint, PNC Improperly Presents the Court with a Series of Disputed Facts for Consideration on the Basis of a Motion to Dismiss; These Facts, if supported by evidence, would Necessitate that the Court Consider PNC's Motion Under a Summary Judgment Standard*

The Fourth Circuit has explained that a

district court may go beyond these documents, which constitute "the pleadings," in a Rule 12(b)(6) proceeding if it converts the proceeding to one for summary judgment. Fed.R.Civ.P. 12(d). Statements of counsel at a Rule 12(b)(6) hearing that raise new facts constitute matter beyond the pleadings. *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 948 (8th Cir.1999).

*Dolgaleva v. Virginia Beach City Pub. Sch.*, 364 F. App'x 820, 825 (4th Cir. 2010).

In *Dolgaleva*, the Fourth Circuit found that the district court had in erred in allowing the defendant "to plead facts outside the pleadings, and relying on those facts to dismiss the

---

[1] Plaintiff would note that the Note presented by the Defendant (which was unredacted and contained certain personal information) is not the same Note that PNC's agents Shapiro & Burson, LP presented to the Circuit Court for Anne Arundel County, Maryland in the foreclosure action. *Compare* Doc. 6-4 to Exhibit 1, Affidavit of Laura Cauper, Authorized Officer of PNC Bank, N.A.. For the reasons stated by the Defendant in its memorandum the Court may take judicial notice of this exhibit without converting the motion to one for summary judgment.

complaint with prejudice." *Id.* at 826.   Respectfully, this is exactly with the Defendant in this case requests the Court to do—i.e. accept its unsupported and disputed factual arguments which are not part of any pleading presently before the Court and are not properly supported by an affidavit pursuant to Fed.R.Civ.P.56 based upon "personal knowledge" or even any other basis. In the absence of any evidence to support the facts alleged by Defendant in its motion, the motion cannot be considered as a motion for summary judgment.

i.      PNC Presents a Series of Disputed Facts, Not Based Upon the Complaint or Any Testimony Properly Before the Court

**Disputed Fact No. 1:**   In several instances PNC disputes Ms. Chalk's well pled facts are "wrong."   For example, PNC believes Ms. Chalk is just "wrong" to allege in ¶ 7 of her complaint that that "Freddie Mac [] is the owner of the loan subject to this action as part of its services and activities to support the secondary housing market.   This conclusion is based upon the sworn, written testimony given under penalties of perjury of Laura Cauper, Authorized Officer of PNC Mortgage a division of PNC Bank, N.A." *See* Opp. at 10.   However, PNC offers the Court no basis for the well pled fact that the Note is not owned by Freddie Mac.   PNC has presented a note that it contends is the operative note. (Doc. 6-4)   The note presented by PNC is of no consequence to the issues in this case. The complaint by Ms. Chalk revolves around Notices of Intents to Foreclose that failed to list the secured party.   The note presented by PNC is obviously a note that was altered after a foreclosure proceeding was filed against Chalk. Attached as Exhibit 2 is a copy of the note that was presented to the state court in conjunction with the *Burson v. Chalk* Action. The note was accompanied by an affidavit that represented that the note being submitted was a true and correct copy of the original. See Exhibit 1. Absent from the note certified as true and correct are the indorsements that appear on the copy submitted by PNC to this Court. What this means is that PNC's argument that it was the holder by virtue of

indorsements has no relevance to the claims relating to the foreclosure proceeding filed against Chalk since the endorsements it relies on post date the activity complained of by Chalk.[2]

Moreover, if the Court were to consider the note presented by PNC (Doc. 6-4), it includes a notation on the first page referencing Freddie Mac. This supports Chalk's contention that Freddie Mac is the owner/holder of the note and not PNC.

**Disputed Fact No. 2:** In a second instance PNC claims that Ms. Chalk is "plainly wrong" for alleging "that the reason that NOITF should include the identity of the 'owner' of the loan is so that borrowers can contact someone other than the servicer about a loan modification. Complaint ¶ 13." *See* Opp. at 10.[3]

**Disputed Fact No. 3:** Lacking a basis to do so under Fed.R.Civ.P.12(b)(6) without converting the motion to one for summary judgment, PNC presents the Court with what it purports to be "a copy of the original promissory note secured by the Deed of Trust. The Note is endorsed in blank by the original payee, National City." Opp. at 8. However, the Note (Doc. 6-4) presented by PNC to the Court is not the same Note presented to the state court in the

---

[2] While the indorsements to PNC have no impact on Chalk's claims relating to false NOITF, it does raise that PNC, if it persists in its ownership claims, acquired the debt after it was in default since it post dates the foreclosure proceeding filed. PNC may be considered a debt collector permitting Plaintiff to assert an additional claim under the Fair Debt Collection Practices Act through an amended complaint.

[3] Defendant improperly summarizes Plaintiffs allegation in ¶ 13 of the complaint which actually reads in its entirety, "The simple reason for this requirement was that the legislature intended for the homeowners to know the name of the secured party who owned their mortgage because the servicers were not responding to calls from homeowners for assistance or in many instances even answering the phones in a reasonable time period. In addition, many servicers falsely claimed, all too frequently, that the owner of the loan would not permit a sustainable modification. To verify these representations and ensure homeowners had knowledge of who owned their loan, the legislature required that a standard, uniform NOITF be sent to each homeowner which identified the secured party so that the homeowner could have some other party to contact when the servicer failed to help." *See* Com. ¶ 13

foreclosure action as a "true and accurate copy" of the original Note.  *See* Com. ¶¶ 7, 40; Exhibit 1.

**Disputed Fact No. 4:**  With no support from the only Pleading before the Court, i.e. the Plaintiff's Complaint (Doc. 1), PNC claims to be "a person in possession of the Note payable to bearer, PNC is indisputably the 'holder' of the Note."  Opp. at 9.  Cf. Com. ¶¶ 23-25.

**Disputed Fact No. 5:**  PNC also claims without any support from the Complaint that "it is the successor of the original lender, National City…[and] PNC is the successor by merger of National City."  Opp. at 9-10.

> ii.    Pursuant to Fed.R.Civ.P.56(d) Plaintiff Respectfully Requests the Opportunity to Conduct Discovery on the Unsupported, Disputed Facts Above Before the Court Considers Them as Part of the Defendant's Motion to Dismiss

Ms. Chalk respectfully requests, through counsel, pursuant to Fed.R.Civ.P.56(d) that the Court defer considering the motion or disputed facts above until discovery is completed in this matter.  *See* Exhibit 3, Dec. of P. Robinson.  In support of this request, Ms. Chalk has filed a specific declaration with specific requests and details she would want to explore in discovery in order to respond to PNC's alleged facts.  *Id.*

> B.  *Ms. Chalk's Damage Claims Involve a Material, Mandatory Statutory Requirement Established by the Maryland General Assembly as a Prerequisite to Commencing a Foreclosure Action in the State of Maryland*

> i.    Background on 2008 Legislative Rewrite on Maryland Foreclosure Law

Ms. Chalk and the putative class members' damage claims arise from the unfair, deceptive, and misleading representations of PNC, in violation of a remedial, mandatory statutory requirement enacted by the legislature to provide specific information to Maryland homeowners at least 45 days in advance of the commencement of a foreclosure action against the defaulted homeowner borrower and residential real property.  As a result of these actions,

PNC has initiated hundreds of unlawful and improper foreclosures throughout the State of Maryland since April 2008 in express violation of the legislature's and Governor O'Malley's common sense changes to Maryland's 200 year old foreclosure process in 2008.

       1.    *Governor O'Malley's Homeownership Preservation Task Force*

The changes arose from the recognition, at the height of our current financial crisis, of the devastating effects of foreclosure.  The Maryland Homeownership Preservation Task Force Report aptly summarized the devastating effect of foreclosures on the community as follows:

> Foreclosures have a devastating effect on homeowners and the communities in which they live. Frequently, a homeowner who loses his or her home to foreclosure loses the accrued equity. A property sold in a foreclosure sale typically draws a lower price than it would in a regular market sale. In the first half of 2005, Maryland's "foreclosure discount" was 18.8 percent, according the St. Ambrose Housing Aid Center, Inc. This is a tragedy for a growing number of Maryland families.

> Extensive damage is felt in neighborhoods and communities across Maryland. Research shows that with every foreclosure on a single family home, the value of homes within an eighth of a mile declines by about nine-tenths of a percent. Property tax revenues decline proportionally, causing a negative impact on state and local governments. A study of foreclosures in Chicago in 2005 estimated that a single foreclosure costs city government up to $5,000 or more.

> Foreclosures also bring with them the potential for more violent crime. Research indicates that for every single percentage point increase in the foreclosure rate in a neighborhood, violent crime in that neighborhood increases by about two percent. Foreclosures can lead to vacant or neglected properties, which create an eyesore and become targets for vandalism. This can tip a community from one dominated by homeowners to one dominated by investors.

> Of course, the lending industry and investors also take a hit from rising foreclosure rates. Some major lenders have closed their doors, declared bankruptcy or shuttered their subprime lending arms as a result of the waning demand for risky mortgage products in investor markets. Lenders typically lose $50,000 or more on a single foreclosure, according to information from St. Ambrose Housing Aid Center, Inc., the banking industry cites a figure well over $60,000.

Maryland Homeownership Preservation Task Force Report 12 (November 29, 2007) *available at* http://www.gov.state.md.us/documents/HomePreservationReport.pdf (footnotes omitted) (hereinafter "Task Force Report").

To reasonably address and avoid some of the negative consequences of foreclosure, the Task Force Report made nine general recommendations that are relevant to the issues before the Court. *See Id.* at 40-43. Included among these was a specific recommendation, which included the adoption of

> a statute requiring that Notice of Intent to Foreclose be sent to the borrower by certified and first class mail 45 days prior to the filing of an Order to Docket in a foreclosure action and that the sending of the Notice be a prerequisite to filing any foreclosure action in Maryland. This recommendation was based on proposed legislation in Massachusetts that requires as a pre-requisite to filing foreclosure the sending of a Notice of Intent to Foreclose . . . [and] requires that the Notice be uniform and include fact of default and that foreclosure can be filed after the period, the contact information of all involved (servicer, assignee, mortgage company, etc.) and resources for assistance.

*Id.* at 36-37 (recommendation 9.2).

The Task Force Report also addressed the need to prevent mortgage fraud and made the following recommendation to "[e]nact a criminal mortgage fraud statute that would apply to all possible players involved in mortgage transactions and . . . [i]nclude a private right of action for defrauded persons." *Id.* at 33 (recommendation 8.1).

In response to all the recommendations of the Task Force Report, the legislature considered and did pass four priority bills of Governor O'Malley implementing most of Task Force Report recommendations—including those directly related to this action concerning (i) a prerequisite Notice of Intent to Foreclose to Homeowners with certain information contained on

it to be sent 45 days before commencement of a foreclosure action and (ii) misrepresentations in the mortgage process.

> ### 2.     The Maryland General Assembly's Response to the Task Force Report

In response to the expanding foreclosure crisis and the Task Force Report, the General Assembly introduced and passed several bills during the 2008 legislative session to change Maryland's foreclosure process and curb certain predatory real estate processes.   These bills were passed with nearly complete bi-partisan support. As summarized in the General Assembly's 90 Day Report for the 2008 session:

> Until [2008], Maryland's foreclosure process, from the first foreclosure filing to final sale, had been among the shortest in the nation. Maryland is a quasi-judicial State, meaning that the authority for a foreclosure sale is derived from the mortgage or deed of trust, but a court has oversight over the foreclosure sale process. Most mortgages or deeds of trust include a "power of sale" (a provision authorizing a foreclosure sale of the property after a default) or an "assent to decree" (a provision declaring an assent to the entry of an order for a foreclosure sale after a default). Under the Maryland Rules, it was not necessary to serve process or hold a hearing prior to a foreclosure sale pursuant to a power of sale or an assent to a decree. Consumer advocates contended that the short timeframes and weak notice provisions in State law seriously limited a homeowner's options to avoid foreclosure by, for example, working out a payment plan with the lender or selling the house. In addition, filing a request for an injunction to stop the sale is expensive, time consuming, and not a realistic option for most homeowners.

> *Senate Bill 216* (Ch. 1)/*House Bill 365* (Ch. 2), emergency legislation that took effect April 4, 2008, make a number of significant changes to the foreclosure process in Maryland for residential real property. "Residential property" is defined under the Acts to mean real property improved by four or fewer single-family dwelling units. Except under specified circumstances, the Acts prohibit the filing of an action to foreclose a mortgage or deed of trust on residential property until the later of 90 days after a default in a condition on which the mortgage or deed of trust states that a sale may be made or 45 days after the notice of intent to foreclose required under the Acts is sent.

*Senate Bill 216/House Bill 365* require a secured party to send a written notice of intent to foreclose to the mortgagor or grantor and the record owner at least 45 days before the filing of an action to foreclose a mortgage or deed of trust on residential property. This notice must be sent by certified mail, postage prepaid, return receipt requested, and by first-class mail. A copy of the notice must also be sent to the Commissioner of Financial Regulation in the Department of Labor, Licensing, and Regulation. The notices must be in the form that the commissioner prescribes by regulation and contain the names and telephone numbers of the secured party, the mortgage servicer, the mortgage broker or originator, and an agent of the secured party who is authorized to modify the terms of the mortgage loan. The notice must also contain (1) the Maryland license number of the mortgage lender and mortgage originator; (2) the amount required to cure the default and reinstate the loan; and (3) any other information that the commissioner requires by regulation.

. . . .

*Senate Bill 217/House Bill 360* define "mortgage fraud" as any action by a person made with the intent to defraud that involves:

• knowingly making, using, or facilitating the use of any deliberate misstatement,

misrepresentation, or omission during the mortgage lending process with the intent that it will be relied upon by a mortgage lender, borrower, or any other party to the lending process;

• receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from the aforementioned actions;

• conspiring to violate either of the preceding provisions; or

• filing or causing to be filed in the land records in the county where a residential real property is located any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.

Under the Acts, the "mortgage lending process" includes the solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan, as well as the notarizing of any document in connection with a mortgage loan.

Md. Dept. of Legislative Services, The 90 Day Report, A Review of the 2008 Legislative Session, F16-18 (April 11, 2008) *available at* http://mlis.state.md.us/2008rs/90-Day-report/index.htm.

3.      Maryland's New Statutory Requirements

Maryland law now requires as a mandatory, condition precedent to the filing of foreclosure action, like that initiated by PNC against Ms. Chalk previously (as well as that threatened against Ms. Chalk again), that a Notice of Intent to Foreclose identifying the "secured party" to the loan.  Specifically, the legislature required for the first time:

> (1) Except as provided in subsection (b)(2)(iii) of this section, **at least 45 days before the filing of an action to foreclose a mortgage or deed of trust on residential property**, the secured party **shall** send a written notice of intent to foreclose to the mortgagor or grantor and the record owner….

> (4) The notice of intent to foreclose shall:

>> (i) Be in the form that the Commissioner of Financial Regulation prescribes by regulation; and

>> (ii) Contain:

>> 1. The name and telephone number of:

>>> A. The secured party;

>>> B. The mortgage servicer, if applicable; and

>>> C. An agent of the secured party who is authorized to modify the terms of the mortgage loan;

MD. CODE ANN., REAL PROP., § 7-105.1(c) (emphasis added).[4,5]  The express purpose of this change in more than 200 hundred year old foreclosure process was to "prohibit[] an action to

---

[4] Since 2008 the legislature has from time to time amended the new statutory foreclosure scheme first established in 2008.  However, these provisions have not changed and the purpose behind them has only grown as the housing crisis has increased.

foreclose a mortgage or deed of trust on certain residential property from being filed until after certain periods of time . . . requiring a certain notice of intent to foreclose to be sent to certain persons in a certain manner a certain period of time before the filing of an action to foreclose a mortgage or deed of trust on certain residential property." H.B. 365, Preamble, 2008 Leg. 425th Sess. (Md. 2008) *available at* http://mlis.state.md.us/2008rs/bills/hb/hb0365e.pdf.

A plain reading of the statute contemplates that three distinct entities/persons (i.e. the secured party, the mortgage servicer, if applicable, and the agent of the secured party who is authorized to modify the terms of the mortgage loan) would be identified to parties at-risk of foreclosure like Ms. Chalk at least 45 days before the commencement of the foreclosure action. This is the only conclusion that may be drawn from the language of the statute itself when the legislature used the conjunctive "and" as opposed to the conjunctive "or" on the list of parties which "shall" be identified on the NOITF.  The statute did not contemplate that the servicer could be substituted for the secured party since PNC now claims to be the holder of the note. *Compare Friedman v. Hannan*  2010 WL 114493, 9 (Md.) (Md.,2010) ("Decedent placed the conjunction 'and' before the last person comprising *each* group, thus suggesting an intent to create two lists, rather than one") (footnote omitted); *Allen v. State,*  171 Md.App. 544, 555

---

[5] *See Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003) (noting "[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application").  *See also Addison v. Lochearn Nursing Home, LLC,* 983 A.2d 138, 153 (Md. 2009) (we "first look[] to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory")(internal quotations and citation omitted).  *Compare  Stone v. Instrumentation Laboratory Co.*, 591 F.3d 239, 243 (4th Cir. 2009) ("If the plain language of the statute resolves the question and 'the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)").

(Md.App.,2006)("Of significance to the meaning of the section is the conjunction 'and' between the two main clauses of CL § 7-203, the 'presence on the premises clause' and the 'taking and carrying away' clause. Use of the conjunction 'and' makes plain that both presence on the premises of another, *and* taking and carrying away property are required elements of the offense)(emphases in original).

If the legislature had intended for a secured party like Freddie Mac to avoid disclosure by transferring a note endorsed in blank to its servicer, PNC, and then to its foreclosure attorneys, why did the legislature desire for the servicer to be separately identified on the Notice of Intent to Foreclose?   Such a construction of the statute, desired by the Plaintiffs, would make the list of entities identified in MD. ANN. CODE, REAL PROP., § 7-105.1(c)(4)(ii)(1) merely "surplusage, superfluous, meaningless or nugatory."  Respectfully, such a constriction is not permitted by the cannons of statutory construction.

On the face of the statute, it is clear beyond question, that the legislature desired for homeowner at risk of foreclosure to know for a term of not less than 45 days **before** the foreclosure action would filed, who they can talk to about "modif[ing] the terms of the mortgage loan" or "even exploring other loss mitigation options" before the foreclosure was filed **not after** it was filed as the Plaintiffs urge the Court.  MD. ANN. CODE, REAL PROP., § 7-105.1(c)(4)(ii)1C.[6]

---

[6] Certainly there is no legitimate argument that requiring Freddie Mac to identify itself to homeowners under Maryland law is an undue burden; nor is such a requirement unique for all secured parties to residential mortgage transactions.  Two years ago (and one year after the Maryland General Assembly made its requirement), Congress passed the "Boxer Amendment" to the Helping Families Save Their Homes Act of 2009, 15 U.S.C. 1641(g), requiring such disclosures under the Truth in Lending Act when mortgages are transferred.   The purpose of this new requirement was simple and similar to Maryland's requirements.   The sponsor explained, "Mr. President, I say thank you, particularly to Chairman *Dodd* but also to Senator *Shelby*, with whom I have discussed this amendment. It is very simple. It just says that if you have a mortgage on your home, you ought to know who holds that mortgage note. We say that if your mortgage is sold to someone else, the new party has to let you know who they are and how they can be

The legislature wanted every homeowner to know who they can go to up the "chain" of command to get answers to their modification and other loss mitigation requests.[7]   The true secured party, Freddie Mac in this instance, is the "owner of the subject loan."   *See* Exhibit 1. Neither PNC nor its Substitute Trustees, who now claim to be the secured party, could offer Ms. Chalk any loss mitigation unless each followed the Freddie Mac guidelines.   *See generally* Freddie      Mac      Seller/Servicer      Guide      and      Forms      located      at http://www.freddiemac.com/sell/guide/#.

Just looking at the words of the statute, there can be no meaningful dispute that Freddie Mac is in fact the secured party as identified in MD. ANN. CODE, REAL PROP., § 7-105.1(c).  But, it was not identified as the secured party on any of the multiple NOITFs sent to Ms. Chalk (Com. at ¶¶43, 45)—including the one provided by Shapiro & Burson LP (Doc. 6-3) as the basis for commencing the foreclosure action against Ms. Chalk and the Property.

C.   *Looking Beyond the Plain Meaning of MD. ANN. CODE, REAL PROP., § 7-105.1(c) Which It Utterly Ignored, PNC Wishes This Court to Construct a Reading of Md. Rule 14-202(q) Which Would be Unconstitutional*

---

contacted. This is very important. We have read stories where people cannot find out who holds their mortgage. Frankly, if you are in trouble and you want to renegotiate your mortgage, you need to sit down with the company that holds your note. That is all we do in this amendment." Statement of Senator Barbara Boxer, Congr. Rec. S5173 (May 06, 2009).

[7]   PNC argues that "Plaintiff alleges no facts showing that identifiying the 'owner' of the loan [i.e. Freddie Mac] would facilitate loan modifications."  This statement is frankly disingenuous and Ms. Chalk would request the Court to take judicial notice  pursuant to Fed.R.Evid. 201(c)(2) that Freddie Mac, which is presently supported by U.S. taxpayers, itself highlights on its on website its success in helping American homeowners with various loss mitigation options to Maryland homeowners.  *See* http://www.freddiemac.com/corporate/company_profile/our_role_state/index.html?intcmpRP201 20109HR (attached hereto as Exhibit 4).  If Freddie Mac can share its loss mitigation statistics on its website why can it not be referenced in a related notice required by the State of Maryland for the same purpose?

PNC urges the Court to apply a limited reading of Rule 14-202(q) for the term "secured party" to the statutory requirement in MD. ANN. CODE, REAL PROP., § 7-105.1(c).  See Opp. at 8. However, the rule relied upon by PNC only applies to Chapter 14 of the Maryland Rules.  Rule 14-202 ("**In the Rules in this Chapter**, the following definitions apply except as expressly otherwise provided or as necessary implication requires")(emphasis added).  So by it's very terms, Rule 14-202(q) cannot apply to MD. ANN. CODE, REAL PROP., § 7-105.1(c).  Rule 14-202 applies to "the Rules in this Chapter."

Even if the Court desired to examine Rule 14-202(q), PNC's narrow reading of Rule 14-202(q) looks solely to one part of the rule and not the entire scope.  PNC says, "we are the holder of the note."[8]  However, this statement does not accurately reflect the breath of Rule 14-202 which provides:

> **(q) Secured Party.** "Secured party" means **any person who has an interest in property secured** by a lien or any assignee or successor in interest to that person. The term includes:
>
> (1) a mortgagee;
>
> (2) the holder of a note secured by a deed of trust or indemnity deed of trust;
>
> (3) a vendor under a land installment contract or holding a vendor's lien;
>
> (4) a person holding a lien under Code, Real Property Article, Title 14, Subtitle 2;
>
> (5) a condominium council of unit owners;
>
> (6) a homeowners' association;
>
> (7) a property owners' or community association; and

---

[8] Plaintiffs do not concede that either PNC or its substitute trustees are actually even holders of the Chalk Note now or even at the time when the bogus Notices of Intent to Foreclose were sent to Ms. Chalk.  Plaintiff alleged any physical holding of the note by PNC was merely as agent. See Complaint, ¶¶ 23-25 This is a factual issue to which the Plaintiff has requested discovery pursuant to Fed.R.Civ.P.56(d).  *See* Exhibit 3.

(8) a ground lease holder, as defined in Code, Real Property Article, § 8-402.3 (a)(3).

The term does not include a secured party under Code, Commercial Law Article, § 9-102 (a)(3).

Maryland Rule 14-202(k) (emphasis added).

Even if the Court desired to apply Rule 14-202(q) to legislative mandate in MD. ANN. CODE, REAL PROP., § 7-105.1(c), a plain reading the Rule-202(q) does not support Plaintiffs' position. The rule provides that a "'Secured [P]arty'" means <u>any</u> person who has an interest in property secured by a lien or <u>any</u> assignee or successor in interest to that person." Rule 14-211(q). Plaintiff has alleged in her complaint that Freddie Mac has an interest in the Property. Com. at ¶¶ 19, 23, 38-39, 42-43, 45. PNC's own testimony to the state court admits Freddie Mac is the "owner of the subject loan." *See* Exhibit 1. So, there is no meaningful dispute that Freddie Mac has an interest in the Chalk Property. Freddie Mac was not properly identified as the secured party on the NOITF sent to Ms. Chalk before the filing of the original foreclosure action or even the threatened actions based upon the NOITFs sent to Ms. Chalk immediately before the commencement of this action. Com. at ¶¶ 39, 43, 45.

Finally, by arguing that only the "holder of the note" is the secured party, PNC also requests this Court to construe an unconstitutional application of a Maryland Rule to trump the term used by the legislature. The Maryland Constitution provides that "[t]he Court of Appeals…shall adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Court of Appeals or **otherwise by law**." MD Constitution, Art. 4, § 18 (emphasis added). As described by the legislative history and the plain language of the statute, MD. ANN. CODE, REAL PROP., § 7-105.1(c) was intended to mean

much more than just the temporary "holder of the note."  PNC's construction using a portion of a Maryland Rule would create an unconstitutional result by trumping the statute which is not permitted.  MD Constitution, Art. 4, § 18.  In addition, failing to follow the General Assembly's legislative enactment based upon a court rule also violates the basic separation of powers principles of the United States and the Maryland Constitution. The Maryland State Constitution, in its Declaration of Rights states, "[t]hat the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other" Md. DEC. OF R. ART. 8.

In *Hensley v. Bethesda Sheet Metal Co*., the trial court held, as PNC urges here, that a court-enacted rule took precedent over the statute that dealt specifically with the issue of the case.[9] *Hensley v. Bethesda Sheet Metal Co*., 230 Md. 556, 562 (1963). On appeal, the Court found that the trial court had erred in this decision. The Court held that the statute was in fact the proper authority for the court to abide by, pursuant to Article IV, § 18 of the Maryland State Constitution. *Id*. at 562.

Similar to PNC's argument here, the trial court in *Hensley* found that a rule relevant to the issue was the prevailing authority despite the fact that there was a more recent statute regarding the issue that had been enacted by the State Legislature. *Id.* at 562. The rules and

---

[9] *Hensley v. Bethesda Sheet Metal Co*. concerns an employee's workman's compensation claim that was filed in Montgomery County Circuit Court. The employee appellant challenged the circuit court's ruling and appealed the case pursuant to Md. Ann. Code art. 101, § 56(a) (1957). Subsequent to his appeal filing, the court re-promulgated former rules Md. R. B1 and Md. R. B12. The Legislature, then, repealed and reenacted MD. ANN. CODE art. 101, § 56(a) (1957) making it the most recent enactment. The trial judge held that the employee appellant's appeal had not been done in a timely or effective manner according to former rules Md. R. B1 and Md. R. B12. However, following the constitutional rule of Md. Const. art IV, §18A, the Court of Appeals found that the Legislature's enactment of MD. ANN. CODE art. 101, §56(a) was the most recent provision that was applicable to the appellant's appeal, as opposed to the trial judge's enforced Md. R. B1 and Md. R. B12, and therefore the correct provision to follow. 230 Md. 556 at 558-562.

statutes in *Hensley* were subject to some uncertainty and confusion as the trial court and Court of Appeals had to deal with the many number of repeals, reenactments, and re-promulgated rules between the judiciary and Legislature. *Id.* at 560-561. However, these are not issues that affect this case here. The clarity of the appropriate statute, Real Property Code 7-105.1, and its prevalence over Rule 14-202(q), is straightforward and requires upholding by this Court.

> D. *The Court of Appeals Has Explained that It is Not the Job of Courts to Administer a Fix to Foreclosure Crisis and It Will Defer to the Legislature*

PNC ends its argument looking beyond the plain meaning of MD. ANN. CODE, REAL PROP., § 7-105.1(c), to argue that Ms. Chalk should go to the legislature and seek a policy change.  Opp. at 11.  Respectfully, Ms. Chalk would respond by saying if PNC does not like the result of its violation of a simple, remedial Maryland statute, it should seek a change to the legislation in General Assembly itself.  At the outset of this crisis this is exactly what the Court of Appeals explained in *Griffin v. Bierman which* stated that its

> deference to the Legislative and Executive branches is even more critical at this juncture because the scope of the mortgage foreclosure problem most likely requires a comprehensive solution, one outside of this Court's authority or institutional competence to craft in a single case…We are not capable of fixing a problem with so many causes outside the Court's limited judicial realm in the present case. Although policy adjustments may be needed, they are best created as part of a comprehensive solution so that the various components of such a solution may work in concert.

*Griffin v. Bierman*, 403 Md. 186, 215 n. 19 (Md. 2008).  Respectfully, abiding with the enactments and policy decisions of the legislature and executive office on the part of the judiciary would be of the greatest benefit to Maryland state homeowners and towards the battling of the detrimental foreclosure crisis. PNC in this case is unfortunately but one example of the many lenders and holders who use shortcuts around accuracy and legitimacy to deny Maryland homeowners certain information deemed material by the legislature despite the unsteady

conditions of the current national economy.[10] Without proper enforcement by the judiciary of the legislature's laws, such violations of the law will continue.

      E. *PNC Overstates Ms. Chalk's Constitutional Challenge to MD LEGIS 322 (S.B. 562) (2010); S.B. 562 is a Special Law Intended to Do What the State and Federal Constitutions Expressly Prohibit*

In Count Five of her Complaint (Doc. 1), Ms. Chalk seeks a declaration from this Court that S.B. 562 violates the express prohibition of Article III, Section 33 of the Maryland Constitution as it applies to her Deed of Trust.   If necessary, Ms. Chalk also seeks a declaration that the retroactivity application of S.B. 562 unlawfully interferes with her vested rights and property interests.   Specifically, Ms. Chalk asks this Court to "declare that any power of sale in the Deeds of Trust may not be enforced by a trustee other than an individual and therefore the Deeds of Trust between the Named Plaintiff and Sub-Class which do not name an individual as Trustee may not be enforced through a power of sale."  Com. at ¶ 110.  So, contrary to PNC's suggestion to the contrary that Ms. Chalk seeks a declaration "that the Deed of Trust is invalid" (Opp. at 11), the specific relief requested by Ms. Chalk is not so sweeping and is targeted and limited to whether or not her Deed of Trust (and those of the putative subclass members) may not be enforced through a power of sale.

     i.     *What led to consideration of S.B. 562?*

 For more than a hundred and thirty years, Maryland law has held that powers of sale or assent to decree may only be exercised by natural persons as opposed to corporate entities. Longstanding Maryland case law holds that a power of sale which failed to name an individual as a trustee was void and could not be remedied by appointment of natural persons as substitute trustees. *Frostburg Mutual Bldg. Assoc. v. Lowdermilk*, 50 Md. 175, 179,

---

[10] Md. Dept. of Legislative Services, The 90 Day Report, A Review of the 2008 Legislative Session, F16-18 (April 11, 2008) available at http://mlis.state.md.us/2008rs/90-Day-report/index.htm.

1878 WL 65 81 (1878); *Queen City Perpetual Bldg. Assoc. of Cumberland v. Price*, 53 Md.

397, 400, 1880 WL 6608 (1880); *Chilton v. Brooks*, 71 Md. 445,450, 18 A. 868 (1889);

*Barrick v. Horner*, 78 Md. 253, 257, 27 A. 1111 (1893); *Whitworth v. Algonquin Assoc., Inc.*,

75 Md. App. 479, 484-5, 541 A.2d 1328, 1331 (1988).

 The relevant case law was aptly summarized by the Maryland Court of Special

Appeals as follows:

> All that was decided in those cases [*Frostburg* and *Queen City, supra*]
> adversely to the power in the mortgages there involved, was that the power, being
> given to a corporation and to no one else, the power was void. It is necessary
> that someone capable of executing the power should be designated as authorized
> to execute it. For the want of such designation in [*Queen City* ] the 53 Md. case,
> the power was declared void; and in *Lowdermilk's Case* in 50 Md., nothing was
> decided but the inability of a corporation to execute the trust given by the power.

*Whitworth v. Algonquin Associates, Inc.*, 75 Md. App. 479, 484, 541 A.2d 1328, 1330 (Md.

Ct. Spec. App. 1988)([ ] in the original).

 Despite this longstanding case law, beginning in 2009 when many Maryland courts

began reviewing the increased number of foreclosures being filed and identified that the

power of sale or assent to decree for sale provisions contained in some deeds of trust or

mortgages being foreclosed upon identified not natural persons but instead corporations.

Further, consistent with the long-standing case law

> [c]ertain local courts have interpreted deeds of trust that omit the name of the trustee
> or contain the name of an entity, rather than a natural person, to be void. These courts
> have, at times, required foreclosing attorneys to file a petition to foreclose rather than
> allowing a foreclosure to proceed under a power of sale provision.

Exhibit 5, S.B. 562 Fiscal Note at Page 2.

 *ii. How does S.B. 562 attempt to change the law?*

 On its face S.B. 562 attempts to the take the following actions:

- Identify "the failure to name any Trustee in a Deed of Trust" as an additional failure in the formal requisites to which Maryland curative statute of limitations applies.  Md. Ann. Code, Real Prop. § 4-109.

- Limit the meaning of "natural person" to individuals.  Md. Ann. Code, Real Prop. § 7-105(a).

- To declare that instruments, i.e. deeds and deeds of trust, which otherwise had been invalid or void due to an error of the designation of the trustee pursuant to the power of sale or assent to foreclosure are no longer invalid and may now be enforced.  Md. Ann. Code, Real Prop. § 7-105(b).

- To apply "retroactively…to affect any mortgage or deed of trust on record or recorded on or after June 1, 2010."  Exhibits 6 and 7 at Section 2.

In the legislative history, the purpose of the legislation is also described as follows,

> FOR the purpose of providing that failure to name any trustee in a deed of trust does not have any effect on an instrument under certain circumstances… providing that an error or omission in a mortgage or deed of trust concerning the designation of the trustee or individual authorized to exercise a power of sale does not invalidate the instrument or the ability of the mortgagee or beneficiary of the deed of trust to appoint an individual to exercise the power of sale.

Exhibits 6 & 7 (preamble to S.B. 562).[11]

Finally, it bears repeating that the legislature knew and intended S.B. 562 to provide a safe harbor to correct deeds of trust and other instruments which were "void" under Maryland law.  Exhibit 5, S.B. 562 Fiscal Note at Page 2 ("Certain local courts have interpreted deeds of trust that omit the name of the trustee or contain the name of an entity, rather than a natural person, to be void.  These courts have, at times, required foreclosing attorneys to file a petition to foreclose rather than allowing a foreclosure to proceed under a power of sale provision.  The

---

[11] *O'Phinney v. Trustees of Sheppard & Enoch Pratt Hosp*., 88 Md. 633, 42 A. 58, 59 (1898) ("the preamble [while not] part of the statute…may be resorted to in explanation of the enacting clauses whenever the meaning of the latter is doubtful").

bill intends to clarify that the person foreclosing must be an individual and that the failure of the

lien instrument to properly designate an individual in the lien instrument does not invalidate the

ability to foreclose under a power of sale clause").

    iii.    *The Maryland Constitution Expressly Prohibits The Legislature From Making Void Deeds Valid*

        *1.*
            *Article III, Section 33*

    Since 1867, the Maryland constitution has provided:

> The General Assembly shall not pass local, or special Laws, in any of the following enumerated cases, viz.: For extending the time for the collection of taxes; granting divorces; changing the name of any person; providing for the sale of real estate, belonging to minors, or other persons laboring under legal disabilities, by executors, administrators, guardians or trustees; giving effect to informal, or invalid deeds or wills; refunding money paid into the State Treasury, or releasing persons from their debts, or obligations to the State, unless recommended by the Governor, or officers of the Treasury Department. And the General Assembly shall pass no special Law, for any case, for which provision has been made, by an existing General Law. The General Assembly, at its first Session after the adoption of this Constitution, shall pass General Laws, providing for the cases enumerated in this section, which are not already adequately provided for, and for all other cases, where a General Law can be made applicable.

Md. Const. art. III, § 33.

    Judge Eldridge has summarized the Court of Appeals case law describing the purpose of

Art. III, Sec. 33 as follows:

> Very early, in *Montague, Ex'r v. State*, 54 Md. 481, 490 (1880), 1880 WL 6650, the Court pointed out that the object of the constitutional prohibition
>
>     "was to prevent or restrict the passage of special, or what are more commonly called private Acts, for the relief of particular named parties, or providing for individual cases. In former times, as is well known and as
>
>     the statute books disclose, Acts were frequently passed for the relief of

named individuals, such as sureties upon official bonds, sheriffs, clerks, registers, collectors and other public officers, releasing them sometimes absolutely, and sometimes conditionally from their debts and obligations to the State. The particular provision now invoked was aimed against the abuses growing out of such legislation, and its object was to restrain the passage of such Acts, and to prevent the release of debts and obligations in particular     cases, and in favor of particular individuals unless recommended by the Governor or the Treasury officials. But the clause in the Act of 1880, we are now considering, is not a law of that character. It is not 'An Act for the relief of Charles P. Montague.' It does not appear to have been passed for his especial benefit, and it no more applies to him than it does to all other citizens of the State in consimili casu...."

In *M. & C. C. of Balto. v. U. Rwys. & E. Co.*, *supra*, 126 Md. at 52, 94 A. 378, the Court set forth one of the purposes underlying s 33 as follows:

"One of the most important reasons for the provision in the Constitution against special legislation is to prevent one who has sufficient influence to secure legislation from getting an undue advantage over others...."

Later, in *Jones v. House of Reformation*, supra, 176 Md. at 56, 3 A.2d 728, the Court stated that

"the constitutional provision was wisely designed to prevent the dispensation or grant of special privileges to special interests, through the instrumentality of special legislation, in conflict with previously enacted general legislation covering the same subject matter ...."

*See also Norris v. Baltimore*, *supra*, 172 Md. at 682-683, 192 A. 531.

*Cities Serv. Co. v. Governor, State of Md.*, 290 Md. 553, 568-69, 431 A.2d 663, 672 (1981).

Finally, Professor Friedman has described Art. III, Sec. 33 of the Maryland

constitution as follows:

This provision began in the 1851 constitution as a simple prohibition on the legislature granting divorces.  The provision took on its modern form in the 1864 constitution, although the list of prohibited classes of special and local legislation was both different and longer.  The provision today is unchanged from 1867.  It is in three parts: (1) a list of prohibited classes of special and local legislation; (2) a prohibition against special laws; and (3) a directive to the legislature to pass general laws including those covering the classes of

legislation listed in the first part of the provision.

The first part lists the classes of prohibited local or special legislation. Pursuant to this, the General Assembly may not pass legislation:

- granting a person or a locality an extension on tax collection;

- granting a person a divorce;

- changing the name of a specific person;

- permitting the sale of specific real property by those under a legal disability;

- giving effect to specific invalid deeds or wills;

- refunding money paid to the State by specific person; or

- releasing persons from specific debts or obligations to the State (without executive branch permission.)

Although these were formally common practices, since the adoption of this provision the General Assembly has apparently refrained from violating this portion of the provision.

Dan Friedman, *The Maryland State Constitution* at Page 114 (G. Alan Tarr ed., Praeger 2006).[12]

    *iv.  Applying the Express Prohibition of Art. III, Sec. 33, S.B. 562 Improperly Attempts to Cure a Class of Defective Deeds of Trust, like Ms. Chalk's Deed of Trust Which Were Void and Invalid*

S.B. 562 did not alter or amend the restriction that powers of sale may only be

exercised by natural persons as opposed to corporate entities.  What the bill attempted to do,

---

    [12] Prior to the 1867 Constitution special legislation was permitted in Maryland to correct deeds which otherwise were invalid or void.  In *Dulany's Lessee v. Tilghman*, 6 G. & J. 461 (1834) for example, the Court of Appeals permitted a legislative act to correct a deed instrument which was defectively executed.  However, there appear to be no cases on record or apparent instances when, as in this case, that the legislature passed a special law to correct a class of defective deeds after the fact.  *See also State v. Norwood*, 1858 WL 3249 (1858) (defective contracts, personal claims, land titles, and defective bills and notes may be validated by legislative acts to make them legally enforceable).

in essence, was overrule the Maryland case law that held that a power of sale which fails to name an individual as a trustee was void and could not be remedied by appointment of natural persons as substitute trustees. *Frostburg Mutual Bldg. Assoc. v. Lowdermilk*, 50 Md. 175, 179, 1878 WL 6581 (1878); *Queen City Perpetual Bldg. Assoc. of Cumberland v. Price*, 53 Md. 397, 400, 1880 WL 6608 (1880); *Chilton v. Brooks*, 71 Md. 445,450, 18 A. 868 (1889); *Barrick v. Horner*, 78 Md. 253, 257, 27 A. 1111 (1893); *Whitworth v. Algonquin Assoc., Inc.*, 75 Md. App. 479, 484-5, 541 A.2d 1328, 1331 (1988).

To this end, the legislature also provided in S.B. 562 that this defect in deeds of trust was subject to the curative statute, Md. Ann. Code, Real Prop. § 4-109. By including this provision any claims as to defects are not permitted if not raised within 6 months.

These acts changed the landscape of Maryland property rights insofar as a class of deeds of trusts that were previously void under Maryland law would now be valid. The problem arises because the legislation also provided that it would apply retroactively and specially for the benefit of a class of parties holding invalid or defective deeds of trusts like the one Ms. Chalk entered into which improperly identified "Lawyers Title Realty Serv Inc. A Virginia Corp." as the trustee. *See Def. Exh. 1 (Doc. 6-1); Com. at ¶ 36.*

In the first instance, the legislature lacked the power to make a class of void deeds valid pursuant to Art. III, Sec. 33. which provides, "The General Assembly shall not pass local, or special Laws, in any of the following enumerated cases, viz.: ...giving effect to informal, or invalid deeds."

SB 562 seeks to do precisely what the legislature may not do - make invalid existing deeds valid since it applies retroactively to all instruments, like the Chalk Deed of

Trust, which were of record on June 1, 2010.  It is a special law specifically prohibited by the Maryland Constitution to benefit a class of invalid power of sale provisions in deeds of trusts already of record.[13]   The Maryland Court of Appeals in *Dryfoos v. Hostetter*, 268 Md. 396, 408, 302 A.2d 28, 35 (1973) has previously rejected a similar attempt to retroactively cure defects in deeds of trust finding it "constitutionally impermissible." The statute examined by the *Dryfoos* court sought to cure a party's failure to provide an affidavit of consideration in connection with a Deed of Trust. The statute provided in pertinent part:

> deeds of trust executed and recorded prior to July 1, 1971, in which the affidavit of disbursement of loan was not in the prescribed form, or was inadvertently omitted . . . shall be and the same are hereby made valid

*Dryfoos*, 268 Md. at 407.

In concluding the statute at issue was unconstitutional, the *Dryfoos* court held

> We willingly grant that the Legislature, having chosen to impose the requirement of an affidavit of disbursement, had the power to repeal the statute prospectively. What it could not do, however, once it had imposed the requirement, was to validate a deed of trust which was a nullity when made, to the prejudice of the Dryfooses and the Hostetters. To reach any other result would be tantamount to saying that the Legislature could take a property interest from one person and vest it in another, which cannot be done by statute.

*Id.* at 408.

The legislature has passed a law, i.e. S.B. 562, that seeks to retroactively cure defects in existing deeds of trust. The Maryland Court of Appeals has held that the Maryland Constitution prohibits such acts.   The well pled facts before the Court in Plaintiff's complaint is closely analogous to facts before the Court of Appeals in *Dryfoos*.  As in that

---

[13] PNC admits in its opposition that S.B. 562 was especially narrow and applies only to a certain group of Deeds of Trust which "named corporations or other entities as trustees" instead of individuals.  Opp. at  20.  Conversely, by omission PNC acknowledges that S.B. 562 does not apply to "all" deeds of trust already of record.  Therefore there can be little doubt that is  special legislation designed to benefit a small group.

case the Court should find and declare that S.B. 562 improperly violates the Maryland

Constitution by attempting to cure a defective and invalid power of sale in a Deed of Trust was

a void as a matter of law since it named a corporation, i.e. Lawyers Title Realty Serv Inc. A

Virginia Corp., and not a natural person as the trustee.

      v.    *Special Laws Prohibited by Art. III, Sec. 33 Do Not Have to Benefit Particular Parties*

PNC stretches its argument concerning Art III, Sec. 33 to also suggest the special laws

prohibition only applies to legislation sought by "particular named persons."  Opp. at 20.  In

reliance of that argument, PNC relies upon one case which upon examination does not stand for

the proposition asserted and are inapposite to the statute before the Court in this matter.  First,

the Court of Special Appeals explained that the Art III, Sec. 33's prohibition did not apply

because the statute at issue "applie[d] to '*any* action for damages for personal injury.'

(Emphasis added.) Therefore, it is a general law and does not violate the constitutional

prohibition."  *Univ. of Maryland Med. Sys. Corp. v. Malory,* 143 Md. App. 327, 354, 795 A.2d

107, 122-23 (2001).  In the matter before the Court, S.B. 562 clearly only applies retroactively

to a class of Deeds of Trust (already of record) which are defective and void as opposed to "all"

or "any" Deeds of Trust.  Further, *Malory* did not involve a statute designed solely for a specific

individual.  *Id. generally*.

Further, the Court of Appeals has previously explained the scope of special laws referred

to in Art. III, Sec. 33, much more broadly than PNC would have this Court to believe under its

"particular named persons" theory.  That court explained:

> More useful, perhaps is the concept set forth in *Prince George's Co. v. B. & O. R. Co.*, 113 Md. 179, 183, 77 A. 433 (1910), and other cases, that "(a) special law is one that relates to particular persons or things of a class, as distinguished from a general law which applies to all persons or things of a class." *See Littleton v.*

> *Hagerstown*, 150 Md. 163, 176, 132 A. 773 (1926) ( "each of the exemptions made by said act is obnoxious to said constitutional inhibition ... unless it operates upon all within a class"); *Grossfield v. Baughman*, 148 Md. 330, 339, 129 A. 370 (1925) (statute held not to be a special law as "the act affects all of a distinct class within a defined territorial unit"); M. & C. C. of Balto. v. U. Rwys. & E. Co., 126 Md. 39, 48, 94 A. 378 (1915). This definition, however, also provides no mechanical rule for deciding cases, as it depends upon a determination of what constitutes the "class."

*Cities Serv. Co. v. Governor, State of Md.*, 290 Md. 553, 567-68, 431 A.2d 663, 671-72 (1981).

Ms. Chalk's claim is about a group of defective and void Deeds of Trust, including Ms. Chalk's, from a class of all Deeds of Trust of record before enactment of S.B. 562.  In *Whiting-Turner Contracting Company v. Coupard*, 304 Md. 340, 499 A. 2d 178 (1985), the Court of Appeals considered a challenge to a statute of repose which barred claims, arising out of defective or unsafe improvements to real property, against architects and professional engineers after ten years but other parties after twenty years. In that case, an individual seeking indemnification from an architect based on allegations of negligent design of a building, argued that the shorter statute of repose for architects or professional engineers violated Article III, Section 33. The court held that the statute applied equally to all architects and engineers and did not benefit any particular individual or group. Therefore, it rejected the argument that the statute was a special law.

> v.    S.B. 562 Unlawfully Attempts To Take A Vested Right
>        From One Person And Give It To Another

Ms. Chalk does not contest the authority of the legislature to declare the legal requirements for deeds and other similar instruments from June 1, 2010 and onward. Her objection at this time is solely to the legislature's attempt to apply a new set of rules retroactively to instruments, like her own Deed of Trust, already of record before the effective date of June 1, 2010.

33

In addition to her previous argument, *supra*, the Maryland Constitution also limits the legislature's ability to enact retroactive legislation that impairs vested property rights under Article 24 of the Declaration of Rights (guaranteeing due process) and Article III, Sec 40 (prohibiting the taking of property).   The Court of Appeals in *Dua v. Comcast Cable of Maryland, Inc.,* 370 Md. 604, 623, 805 A.2d 1061, 1073 (2002) stated:

> It has been firmly settled by this Court's opinions that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights. No matter how"rational" under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking one person's property and giving it to someone else.

The Court of Appeals has also established a two step process to determining whether a statute may be given retroactive effect: (1) it must determine whether the legislature intended the statute to have the kind of retroactive effect that is asserted; and (2) if it concludes that the legislature intended for the statute to have retroactive effect it must then examine whether such effect would contravene a constitutional right of prohibition, for example, impairing a vested right or violating the prohibition against ex post facto laws.  *Della Tatta v. Larkin*, 382 Md. 553, 856 A.2d 643 (2004).

There is no dispute that the legislature intended for S.B. 562 to have a retroactive effect by expressly stating it applied to all instruments of record as of June 1, 2010.  There can be no meaningful disagreement that S.B. 562 violated and express prohibition in Art. III, Sec. 33 against legislation making invalid deeds valid.  *Supra* Argument.

Whether Ms. Chalk's and the mortgagee's rights in the Deed of Trust is a "vested right" which cannot be impaired by retroactive legislation is also clear.      First, according to  J.G. Sutherland, Sutherland Stat.Constr. § 41:5, at 444 (7th ed. 2007)

A natural definition of the term "vested" is "accrued," or, as the dictionaries put

it, "completed and consummated." But in that sense, any claim or interest which has come into being and is perfected as "a right" is vested. Consequently, the formulation which uses "vested" to decide the legality of retroactivity is using that concept in a more specialized sense than its ordinary and usual one.

Second, other courts have held that the interest revested in a grantor under a void deed is a vested right. *Trustees of Tufts College v. Triple R. Ranch, Inc*. 275 So. 2d 521 (Fla. 1973). Further, there is no doubt that more than f i v e years before S.B.562's effective date, Ms. Chalk's interests in the Deed of Trust came into being. D e f . E x h . 1 ( D o c . 6 - 2 ) . Whatever the rights in the Deed of Trust, it was improper for the legislature to attempt to declare title in one person to another. *Queen v. Anderson* 191 Md. 522, 62 A.2d 612 (1948); *Assoc. of Independent Taxi Operators v. Yellow Cab Co*., 198 Md. 181, 82 A.2d 106 (1951). *See also Grove v. Todd*, 41 Md. 633, 1875 WL 4887 (1875) (if a deed is entirely void as against a wife because of its defective acknowledgement, it cannot, as against vested rights, be made valid by subsequent legislation).

The impact of S.B. 562 is to give the beneficiary the right to exercise control over the property of homeowners like Ms. Chalk through a power of sale that the beneficiary did not have before the passage of the law. The Plaintiff's Deed of Trust did not meet the basic requirements to be granted such powers over the Plaintiff's property. *See* *Supra* Argument. The vested rights in the real property owned by the Plaintiff are thus impaired and diminished by this retroactive statute in favor a select group of persons—i.e. beneficiaries of the deeds of trust.

Without the retroactive statute, the Plaintiff's ownership interests in the real property cannot be divested through a summary power of sale procedure. Instead, PNC may only exercise control over the Plaintiff's rights after establishing a right to exercise control over the homeowner's property. The exercise a power of sale is akin to a confessed judgment under

the Maryland procedures.   The party seeking to exercise the right is only required to show that the parties' agreement includes a power of sale. The party may then exercise the right through the Maryland judiciary by filing an order to docket.    Md. Code Ann., Real Prop. § 7-105.1 (West).   There is no requirement that a complaint be filed as in any other proceeding before the Maryland judiciary. The right to proceed and conduct a sale of the homeowner's property is presumed and permitted.

The summary procedure allowed in the context of a power of sale does not afford the homeowner the full range of rights and protections necessary (in light of the "assault on the judiciary" by many of the mortgage lenders) normally available in any other legal proceedings before Maryland courts. In an analogous context, the Maryland Court of Appeals  has recognized that the full range of procedures available in a normal case is part and parcel of due process afforded to property owners. In *Sapero v. Mayor and City Council of Baltimore* 398 Md. 317, 347, 920 A.2d 1061, 1078 (Md.,2007) the court addressed the City of Baltimore's use of a quick take procedure in contrast to the normal litigation process that would otherwise apply to a condemnation proceeding.  The court held:

> These quick-take condemnations deal with the fundamental right to property, and any resulting deprivation of process—that which is normally provided under regular condemnation proceedings—should not occur unless warranted by extreme circumstances.

398 Md. at 347, 920 A.2d at 1079.

The same is true here. The power of sale is equivalent to the quick take procedure in condemnation proceedings. In the absence of the power of sale, the Plaintiff would be entitled to the full legal process. The power of sale eliminates the full panoply of protections that would apply to a lender filing a suit (as opposed to an order to docket) seeking to foreclose on a homeowner's property. The impact of a power of sale provision is neither inconsequential nor

insignificant.  Retroactively reviving the ability to exercise a power of sale for select persons is constitutionally impermissible since it deprives the homeowner of due process rights and constitutes an unlawful taking.     MD Constitution, Declaration of Rights, Art.  24; MD Constitution, Art. 3, § 40; U.S.C.A. Const. Amend. V; and U.S.C.A. Const. Amend. XIV.

Consider if SB 562 had eliminated the right to conduct foreclosures through a power of sale in Deeds of Trust entered into before enactment?   There is no doubt that PNC would contest such an act by the legislature as constitutionally impermissible.  *Compare Cities Serv. Co. v. Governor, State of Md.*, 290 Md. 553, 570, 431 A.2d 663, 673 (1981) ("If a particular individual or business sought and received special advantages from the Legislature, or if other similar individuals or businesses were discriminated against by the legislation, this would support a conclusion that the Act constitutes a prohibited special law")(citing *Littleton v. Hagerstown*, *supra*, 150 Md. at 183, 132 A. 773 (1926)).     If removal of the right   is impermissible, validating such a right through retroactive legislation is also impermissible.

The Maryland Court of Appeals recently rendered a decision in *Muskin v. State Dept. of Assessments & Taxation*, 30 A.3d 962 (Md. Oct. 25, 2011) which supports Ms. Chalk's claim and constitutional analysis concerning her vested property (and contractual rights).  In *Muskin*, the Court held a statute unconstitutional because the statute similar to S.B. 562 was retrospective in application.

1.   Background on *Muskin*

The Court of Appeals summarized the statute at issue in *Muskin* as follows

the Maryland General Assembly passed Chapter 290 of the Laws of 2007, which required the SDAT to create and maintain an online registry of properties subject to ground leases. Maryland Code (1974, 2010 Repl.Vol.) Real Property Article, § 8–703(a). Chapter 290 was designed to create a centralized registry where ground

rent tenants could find easily for their properties the amount of ground rent owed, the ground rent due date, the ground rent payee, and the address to whom the rents could be sent. This registry sought to prevent predatory ejectments by protecting tenants against unintentional default. The new statute required ground rent holders to complete and submit a form and registration fee to the SDAT by 30 September 2010. Maryland Code (1974, 2010 Repl.Vol.) Real Property Article, §§ 8–704 and 8–707(a). If a ground rent owner failed to register by the deadline, the new statute mandated that

> the reversionary interest of the ground lease holder under the ground lease is extinguished and the ground rent is no longer payable to the ground lease holder. The extinguishment of the ground lease is effective to conclusively vest a fee simple title in the leasehold tenant, free and clear of any and all right, title, or interest of the ground lease holder, any lien of a creditor of the ground lease holder....

Maryland Code (1974, 2010 Repl.Vol.) Real Property Article, § 8–708(a)(c).

*Id. at 965-966*.

Mr. Muskin, the Appellant, is a "trustee of two trusts owning ground rent leases in Baltimore City" which were of record before enactment of Chapter 290 of the Laws of 2007. *Id.* at *1. In the appeal, Mr. Muskin sought an answer to the following question: "Does the Ground Rent Registry Statute ... violate the federal or state constitutions, or the Maryland Declaration of Rights, by ... extinguishing vested property and contract rights…" *Id. at 967*.

3.    The Court of Appeals Holding in <em>Muskin</em>

The Court of Appeals agreed with Mr. Muskin (in relevant part for the issue before this Court) and found part of Chapter 290 to be "unconstitutional under Maryland's Declaration of Rights and Constitution" as a "retrospective statute". The *Muskin* court defined retrospective statutes as "those that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, **or impose new duties with respect to transactions already completed**." *Id. a*t 969. (internal citations and quotations omitted) (emphasis added)

In support of this holding the Court of Appeals identified, like a Deed of Trust subject to this litigation, that:

> A ground rent lease creates a bundle of vested rights for the ground rent owner, a contractual right to receive ground rent payments and the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew. These two rights cannot be separated one from the other; together they are the essence of this unique property interest, and as such, vested rights analysis must consider them together.

*Id.* at 971 (footnotes omitted). *See also* FN 9 ("The [State] acknowledges that the contractual right under the ground rent lease may be considered a vested property right, but argues strenuously that the reversionary interest is not vested. *We conclude that the two rights are so intertwined that they should not be analyzed separately.* Even if they were analyzed separately, to determine one right is vested is to find Chapter 290's extinguishment scheme flawed fatally")(emphasis added).

The deeds of trust at issue here are contracts. The rights established under these contracts cannot be altered by subsequent legislation no matter how well intentioned. Retrospective statutes that attempt to do so are unconstitutional under the Maryland constitution.

The Court of Appeals also rejected a generalized argument concerning vested rights put forward by PNC in this matter (see Opp. at 16-18) by explaining:

> Vested causes of action may be afforded similar protections, as are other vested rights, but in the spectrum of vested rights recognized previously by this Court, they are not as important as the vested real property and contractual rights which have been almost sacrosanct in our history. Statutes of limitation that affect vested causes of action are remedies, creatures of legislation, while real property and contractual rights are some of our most fundamental rights and a long-standing tradition under our common law. Exceptions granted for impairing rights represented by causes of action should not extend necessarily to vested real property and contractual rights.

*Id.* at 972.

In addition, the Court of Appeals also recognized and relied upon the same argument and authorities relied upon by Ms. Chalk's claim that the legislation did not have the authority to correct defective deeds of trust already of record.

> This Court has long held that the Legislature does not have the power "to give to a law the effect of taking from one man his property and giving it to another...." *Thistle,* 10 Md. at 144.; *Ir. v. Shipley,* 165 Md. 90, 98, 166 A. 593, 596 (1933) (stating that the State "has not the power to destroy vested rights without compensation...."); *Dryfoos v. Hostetter,* 268 Md. 396, 408, 302 A.2d 28, 34 (1973) (finding that a retrospective statute was invalid because "[t]o reach any other result would be tantamount to saying that the Legislature could take a property interest from one person and vest it in another, which cannot be done by statute"); *Anne Arundel Cnty. Com'rs. v. United Rys. & Electric Co.,* 109 Md. 377, 391, 72 A. 542, 547 (1909) (finding a statute invalid because it divests "without compensation [a corporation's] vested property right").

*Id.* at 973.

Finally, the Court of Appeals explained the important policy reason for its holding in

*Muskin* as follows:

> Regardless of how repugnant some of the individual anecdotes of outrageous settlement costs or unfair ejectments reported in the local print media or recounted to legislative committees, the General Assembly does not have the power to fix even an assertedly broken system, or eliminate it altogether, by transferring a ground rent owner's reversionary interest to a leaseholder without just compensation. *Real property and contractual rights form the basis for economic stability*, such as it is, has been, and will become again hopefully. *Allowing the "mere will of the Legislature" to shift drastically the fee simple ownership of land or cancel contractual obligations will shake further the confidence of citizens in their constitutional protections from government interference.*

*Id.* at 973-974 (emphasis added).

As in *Muskin*, the legislature did not have the right to either impose new duties with respect to the parties' completed transaction or "fix" PNC's defective interest in Ms. Chalk's property and Deed of Trust by applying Senate Bill 562, enacted as Chapter 322 during the 2010 legislative session of the Maryland General Assembly. These types of retrospective statutes are

unconstitutional. To hold otherwise will frankly "shake further the confidence of citizens" of

Maryland and eviscerate basic constitutional notions which are the bedrock of our society.

> vi.      S.B. 562 Unlawfully Interferes In A Preexisting Contract Between Ms. Chalk
>          And The Mortgagee

"A deed of trust, among other things, is a contract." *Riggs Nat. Bank of*

*Washington, D.C. v. Wines*, 59 Md. App. 219, 226, 474 A.2d 1360, 1363 (Md. Ct. Spec. App.

1984).   The Court of Appeals, in dealing with retroactive statutes, has also said the

power to enact a retroactive statute is founded upon the police power, but that the power is

limited by due process and obligation of contract restrictions. *Cooper v. Wicomico County,*

*Dept. of Public Works*, 278 Md. 596, 366 A.2d 55 (1976).  There the court explained

> In *Crowner v. Balto. Butchers Association*, 226 Md. 606, 612-13, 175 A.2d 7,
> 10 (1961), the Court recognized the contractual nature of an employer's
> obligation to his employees when it observed that the terms of the contract
> of hire 'were specific as to all factors,' that the claimant's employment was
> insured 'in accordance with the provisions of the Workmen's Compensation
> law,' and that
> '(b)y reason of the contract of hire the employer incurred certain
> obligations under the Compensation law.' Once these obligations are formally
> determined by an order of the Workmen's Compensation Commission, the rules
> of *Janda v. General Motors Corp.*, 237 Md. 161, 169, 205 A.2d 228, 232
> (1964), are applicable and consequently '(a) statute, even if the Legislature so
> intended, will not be applied retrospectively to divest or adversely affect vested
> rights, to impair the obligation of contracts, or so as to violate the due process
> clause . . . .' *See also Silberman v. Jacobs*, 259 Md. 1, 19, 267 A.2d 209, 219
> (1970) ('the legislature could not impair . . . (dower rights) retroactively by
> expanding the husband's interest in the land') *Smith v. Westinghouse Electric*,
> 266 Md. 52, 291 A.2d 452 (1972); *Cline v. City of Baltimore*, 13 Md.App. 337,
> 345, 283 A.2d 188, 192 (1971), aff'd, 266 Md. 42, 291 A.2d 464 (1972) ('the
> rights and liabilities of the parties (under the compensation statute) became
> fixed for the first time (when injury or death, as the case may be, occurred) and
> the rate of compensation could not thereafter, with respect to such event, be
> changed').

*Id.* at 600-01, 58.

Ms. Chalk's Deed of Trust is a contract and to give effect to S.B. 562

retroactively, would be permit the legislature to do something that it cannot do—i.e. interfere in the contractual relationship of Ms. Chalk and the beneficiary of her Deed of Trust, i.e. Freddie Mac, five years after they entered into a contractual relationship.  U.S.C.A. Const. Art. I § 10 (federal constitution further expressly forbids the states to pass any laws impairing the obligation of contracts).

### F.  Ms. Chalk has Adequately Stated Statutory Claims Pursuant to Maryland Law

As part of its broad motion to dismiss all of Ms. Chalk's claims, PNC also asserts that Ms. Chalk's damage, declaratory, and injunctive claims should be also dismissed.  Opp. at 21-28. Largely in support of its request to dismiss Ms. Chalk's statutory, declaratory, and injunctive relief claims, PNC repeats its version of the facts which are not supported by the pleading before the Court.   Ms. Chalk will not repeat her arguments *supra* and will simply respond to those specific, new arguments raised by PNC.

i.      Ms. Chalk has Stated a Claim Related to PNC's Debt Collection Practices Pursuant to the Maryland Consumer Protection Act

The Court of Appeals has explained:

> An 'unfair or deceptive trade practice' includes any false or misleading statement or representation which has the capacity, tendency, or effect of deceiving or misleading consumers and encompasses a representation that consumer realty has a characteristic that it does not have or is of a particular standard or quality that is not the case. Commercial Law Art. § 13-301. Section 13-408 of that article provides for a private cause of action to recover for loss or injury sustained as the result of a practice forbidden by the CPA.

*Hoffman v. Stamper*, 385 Md. 1, 31, 867 A.2d 276, 294 (2005)**.**

The MCPA also states that material misrepresentations constitute unfair and deceptive practices, if a significant number of unsophisticated consumers would find that information

important in determining a course of action in the consumer transaction involved. Md. Code Ann., Com. Law II §§ 13-301, 13-303.  In *Hoffman v. Stamper*, the court upheld the MCPA claims against a residential appraiser, who had no contact with the borrower, for the unfair and deceptive practices related to overstated values for flipped houses "directly 'infected' the sales at issue …[where the consumers] would not have proceeded to closing absent those appraisals. [The appraiser] was an integral part of the entire scheme of deceptive trade practices committed in the sale of consumer realty." *Hoffman,* 385 Md. at 32, 867 A.2d at 295.

As a starting point, Judge Quarles recently summarized the relevant MCPA analysis in a similar bait and switch scheme by a federal lender.

> The [MCPA] prohibits, among other things, (1) false or misleading representations, (2) deceptive material omissions, (3) advertising consumer goods  without the intent to sell them as advertised, and (4) deceiving, omitting, or misrepresenting material facts to induce reliance. Md. Code Ann., Com. Law § 13-301. A fact is "material if a significant number of unsophisticated consumers would find that information important in determining a course of action." *Green v. H & R Block, Inc.,* 355 Md. 488, 524, 735 A.2d 1039, 1059 (1999); *see also Luskin's v. Consumer Protection,* 353 Md. 335, 358-59, 726 A.2d 702, 713 (1999). Materiality is ordinarily a question of fact for the jury. *Green,* 355 Md. at 524, 735 A.2d 1039.

*Harmon v. BankUnited*, 2009 WL 3487808, * 2 -3 (D.Md., 2009) (footnotes omitted).

In support of its argument to dismiss Ms. Chalk's MCPA claim pursuant to Count One of her Complaint, PNC proffers the case of *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 235 (2000) to the Court for the proposition that Ms. Chalk has not adequately pled reliance in support of her claim.[14]  Respectfully, *Philip Morris* does not stand for the proposition suggested by PNC.

---

[14] PNC also relies upon *Stovall v. SunTrust Mortgage,* 2011 WL 4402680 (D.Md. Sept. 20, 2011) for the alleged proposition that the Plaintiff's claims under the MCPA was dismissed because she "had not alleged any facts showing that a false statement was made by the defendant."   In point of fact, Judge Bennett actually dismissed Ms. Stovall's claim because be held Ms. Stovall's facts did not sufficiently identify the time, place, and content of the

Rather, what the Court of Appeals was considering was whether the classes which had been certified by the lower court was proper under Maryland's class action rule.  The court explained "one need only read the depositions of the named class representatives to recognize that reliance will vary from plaintiff to plaintiff."  *Id.*   Further, the Phillip Morris court did not involve the Defendant's failure to comply with a minimal requirement imposed by the legislature in regards to information that must be provided to homeowners. The legislature, by enacting the requirement, has made the information material and necessary information for any homeowner therefore meeting any reliance standard.   Certainly in this instance, viewing the complaint in light most favorable to Ms. Chalk, the Court can determine that reliance is inherent since no reasonable person would believe that mortgage servicers like PNC would omit mandated, material information from homeowners like Ms. Chalk in foreclosure that has been deemed material and necessary by the legislature.

PNC generally disputes Ms. Chalks MCPA damages and characterizes those damages with its own version of the facts.  Opp. at 24.  Respectfully Ms. Chalk has put forward plan, simple statements as to her damages and losses sustained as a result of PNC's improper collection practices.   Com. at ¶¶ 46, 74 (referencing (i) "damage to credit based upon a "publically filed foreclosure action to which PNC had no legal right to file in the manner it pursued"; "legal fees and expenses to defend the bogus action"; "emotional damages due to stress and other physical manifestations including worry, anxiety, fear, and sleeplessness"; and "fees and charges related to the illegal and bogus foreclosure action" which were charged to her

---

misrepresentations by her mortgage servicer or even allege sufficient facts to make her modification claim "plausible on its face."  Id. at * 8.  In this matter, Ms. Chalk has identified dates and places of the misrepresentations and omissions of PNC as well as specific persons involved on behalf of PNC.  So, respectfully, Ms. Chalk's claims are easily distinguishable from those of Ms. Stovall.

account).[15]

In a recent debt collection action, this Court denied a similar request to dismiss a MCPA

claim and summarized the arguments as follows:

> LVNV argues the state law claims should be dismissed in part because the plaintiffs have failed to allege cognizable "injury or loss" under the MCPA or "damages" under the MCDCA. Plaintiffs allege the following damages: attorneys' fees expended in defending the state court actions, damage to credit, and emotional damages. (Am. Compl. ¶ 26.) LVNV concedes that damage to credit and emotional damages are cognizable damages under the state statutes….Nonetheless, LVNV argues that "to the extent" the plaintiffs' state law claims are based on attorney fees incurred in defending the state court actions, the claims are not viable. (Def.'s Mem. at 11.).  Maryland courts recognize that attorneys' fees are recoverable as actual damages in certain circumstances, namely "where the wrongful acts of the defendant [have] involved the plaintiff in litigation with others, or placed him in such relation with others as make it necessary to incur expense to protect his interest." *Montgomery Village Associates v. Mark,* 95 Md.App. 337, 620 A.2d 975, 979 (Md.Ct.Spec.App.1993) (quoting *McGaw v. Acker, Merrall & Condit Co.,* 111 Md. 153, 73 A. 731, 734 (1909)). For example, a plaintiff in a malicious prosecution action is entitled to recover attorneys' fees expended in defending the unwarranted prosecution. *Tully v. Dasher,* 250 Md. 424, 244 A.2d 207, 217 (1968). Here, the plaintiffs seek to recover the cost of retaining attorneys to defend themselves in the state court actions, which they allege LVNV was prohibited from bringing and therefore constituted an "attempt ... to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14–202(8). According to the plaintiffs' allegations, accepted as true for the purposes of the motion to dismiss, LVNV's "wrongful acts ... involved the plaintiff[s] in litigation with others," which made it "necessary to incur expense to protect [their] interest [s]." *McGaw,* 73 A. at 734. Thus, if the plaintiffs succeed in proving that LVNV violated the MCPA and/or the MCDCA when it filed lawsuits against them, and that the expenditure of attorneys' fees to defend themselves in those actions was "reasonable and necessary," *id.,* they may be entitled to recover those costs as actual damages.

*Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 369-70 (D. Md. 2010).

Ms. Chalk would request that the well reasoned decision in *Hauk*, applies to the present

stage of proceedings in this case and that the Plaintiff's allegations, accepted as true at this stage

---

[15] These manifestations have been recognized by the Court of Appeals and in the Civil Patter Jury Instructions.  *See* MPJI –Cv 10:7; *Hoffman v. Stamper*, 385 Md. 1, 34-35 (2005).

of the proceedings, PNC's basis for dismissal of her MCPA claim should be denied.[16]

      ii.     Ms. Chalk has Stated a Claim Related to PNC's Improper Debt Collection Practices Pursuant to the Maryland Consumer Debt Collection Act

PNC only disputes Ms. Chalk's claim under the MCDCA based upon its version of the facts that it was the true and only secured party of the Chalk loan and therefore the NOITF was "not 'bogus.'" Opp. at 25-26. As shown above, Ms. Chalk's well pled facts do not support this argument and on that basis at this stage of the proceedings the Court should, respectfully, deny the motion to dismiss her claim under the MCDCA.

      iii.    Ms. Chalk has Stated a Claim Related to PNC's Improper Mortgage Servicing Pursuant to the Maryland Mortgage Fraud Prevention Act

PNC first disputes Ms. Chalk's claim under the MMFPA based upon its version of the facts that it was the true and only secured party of the Chalk loan and therefore the NOITF was correct. Opp. at 26.

Judge Bennett has recently held that similar misstatements in the foreclosure process by a mortgage servicer like PNC "are sufficient to plead a violation of the MMFPA." *Stovall v. SunTrust Mortg., Inc.*, CIV.A. RDB-10-2836, 2011 WL 4402680, * 10. Judge Bennett specifically ound "the fraud complained of by [the consumer homeowner] allegedly occurred after the closing in connection with the foreclosure proceedings instituted against her, and this Court finds that post-closing activities are clearly contemplated by the Maryland Mortgage Fraud Protection Act." *Id.* at FN 2.

---

[16] In candor to the Court Plaintiff acknowledges that she did not appear in the state court foreclosure proceeding. However, that does not mean, as PNC suggests based upon its version of the facts, that she did not incur legal fees defending the foreclosure action. As discovery proceeds, Plaintiff will be happy to substantiate this allegation in response to PNC's discovery requests. Suffice to say, a defendant to a foreclosure has multiple avenues to defend a foreclosure and participating in the state court action is but one of the options available.

Ms. Chalk will rely upon her previous argument and well pled facts before the Court that the NOITF was a knowing misrepresentation by PNC and incorporate that argument as if stated herein. She further incorporates her well pled and specific damages and argument as to her sufficient damages alleged under the MCPA which applies equally to her claim under the MMFPA.

### G.  Because Ms. Chalk has Pled Sufficient Legal Claims As Demonstrated Above, She is Entitled to Declaratory and Injunctive Relief

PNC next argues since there are "no violations of Maryland law" or of the federal or state constitutions and based upon its version of the facts and not upon the facts as alleged in the Complaint, Ms. Chalk is not entitled to either declaratory or injunctive relief pursuant to Counts Four and Five of her Complaint. Opp. at 27-28. However, since Ms. Chalk has adequately pled claims under the various state statutes for the violation of Maryland law by PNC in its foreclosure debt collection practices, declaratory relief is available and appropriate pursuant to 28 U.S.C. §§ 2201 and Md. Code Ann., Cts. & Jud. Proc., § 3-406, and Rule 23.

### H.  Ms. Chalk Has Pled Sufficient Damages to Provide her Constitutional Standing to Pursue Her Damage Claims

Finally, PNC argues that even though (i) it has pursued an improper foreclosure which has been dismissed but remains part of the public records, and (ii) it has sent Ms. Chalk multiple NOITF which are improper and knowingly failed to disclose Freddie Mac, the Court should assume that PNC has never declared Chalk loan to be in default and there is no "injury in fact" due to PNC's bogus practices deemed illegal by the legislature. Opp. at 28-29.

Respectfully, Ms. Chalk's claims regarding PNC's present and former debt collection practices against her and the damages she has sustained as a result do create the injury in fact

sufficient for this action to proceed.  This is not a matter in which he alleges no injury or losses and seeks only statutory damages.  She has alleged damages and losses and accepting those allegations as true, she has met her burden at this stage of the proceedings to acquire the Court's jurisdiction.

The 4th Circuit has held that "[a] case is fit for judicial decision where the issues to be considered are purely legal ones and where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." *Charter Federal Sav. Bank v. Office of Thrift Supervision,*  976 F.2d 203, 208 (4th Cir. 1992). Those parameters are met by the issues that Plaintiff seeks this to court to adjudicate.  The Plaintiff's claims concerning the constitutionality of S.B. 562 are purely legal and the Maryland legislature's actions are final when it passed the law at issue. Whether that law can be applied to the existing contract between the parties can and should be decided.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to DENY Defendant PNC's Motion to Dismiss, or in the Alternative Motion for Summary Judgment.  Further, should the Court believe that Ms. Chalk's complaint is deficient in any way, she requests leave to amend pursuant to Rule 15.

Respectfully submitted,


_____//s//_____
Scott C. Borison
  Janet Legg
Phillip Robinson
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick MD 21703 (301)
620-1016
*Attorneys for Plaintiffs*




## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing and attached exhibits was served on the Defendant's counsel when filed through the Court's CM/ECF system.

_____/s/_____

Phillip Robinson

## TABLE OF EXHIBITS

**Exhibit #**          **Description**

1                      Affidavit of Laura Cauper, Authorized Officer of PNC Bank, NA

2                      "True and Accurate" Copy of the Note Presented to the Circuit

                           Court for Anne Arundel County, Maryland

3                      Rule 56(d) Declaration of Phillip Robinson

4                      Freddie Mac Public Statement on Its Loss Mitigation Efforts in the

                       State of Maryland

5                      S.B. 562 Fiscal Note, Dept. Legislative Services, Maryland

                       General Assembly

6                      Chapter 322 of Maryland Laws (2010)

7                      S.B. 562, Maryland General Assembly (2010)