IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRACEY L. CHALK | * | |
| | * | |
| v. | * | Case No. CCB-11-3052 |
| | * | |
| PNC BANK, NATIONAL ASSOCIATION | * | |

******

**MEMORANDUM**

Plaintiff Tracey L. Chalk ("Chalk") initiated this action against Defendant PNC Bank, National Association ("PNC"), alleging that PNC violated the Maryland Consumer Protection Act ("MCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), and the Maryland Mortgage Fraud Protection Act ("MMFPA"). Chalk's Complaint also seeks declaratory and injunctive relief. Now pending is PNC's motion to dismiss the Complaint for failure to state a claim and for lack of standing. [ECF No. 6]. The issues in this case have been fully briefed and no oral argument is necessary. See Local Rule 105.6 (D. Md. 2011). For the following reasons, PNC's motion to dismiss will be granted in part and denied in part.

**I.   BACKGROUND**

Taken in the light most favorable to the plaintiff, the facts of this case are the following. Chalk is the owner of residential real property in Severna Park, Maryland. Compl. ¶ 5. The mortgage loan on the property is serviced by PNC. Compl. ¶ 6. According to the Complaint, the owner of the mortgage loan is the Federal Home Loan Mortgage Corporation ("Freddie Mac."). Compl. ¶ 7. On the Deed of Trust associated with the mortgage loan, a corporate entity, "Lawyers Title Realty Serv Inc. A Virginia Corp," is named as trustee. Compl. ¶ 36.

On or about March 31, 2010, Chalk received a Notice of Intent to Foreclose ("NOITF") on the property. Compl. ¶ 38. A Maryland statute requires that a NOITF identify the secured

party and the servicer of the delinquent mortgage loan.  Md. Ann. Code, Real Prop. § 7-105.1(c)(4)(ii)(1)(A).  The NOITF sent to Chalk identified PNC as both the secured party and the servicer.  Compl. ¶ 38.  On or about May 20, 2010, PNC directed a foreclosure law firm, Shapiro & Burson, to commence foreclosure proceedings against the Chalk home ("the 2010 foreclosure action").  Compl. ¶ 39.  In order to initiate the 2010 foreclosure action, PNC appointed natural persons as Substitute Trustees under the Deed of Trust.  Compl. ¶ 16.  On or about March 3, 2011, PNC dismissed the 2010 foreclosure action without prejudice.  Compl. ¶ 42.

On or about August 17, 2011, Chalk received a new NOITF, which represented that PNC was both the secured party and the servicer of the mortgage loan.  Compl. ¶ 43.  On or about October 13, 2011, Chalk received a third NOITF, which again represented that PNC was both the secured party and the servicer on the mortgage loan.  Compl. ¶ 45.  Despite the two 2011 NOITFs, as of the date Chalk filed the instant Complaint, no new foreclosure action had been filed in any court.  Compl. ¶ 44.

## II.    ANALYSIS

PNC contends that Chalk's complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and further contends that Chalk lacks standing to sue.

A Rule 12(b)(6) motion tests the sufficiency of a complaint and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997).

To survive a motion to dismiss, the factual allegations of a complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The plaintiff's obligation is to show sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* It is not sufficient that the well-pleaded facts suggest "the mere possibility of misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Id.* at 678 (internal quotations and citation omitted).

Issues of standing are analyzed under the rubric of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *See Taubman Realty Grp. Ltd. P'ship v. Mineta,* 320 F.3d 475, 480-81 (4th Cir. 2003) (affirming district court's dismissal of complaint for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1)); *Miller v. Pac. Shore Funding*, 224 F.Supp.2d 977, 994 (D. Md. 2002) ("[D]efendants may aptly challenge [standing's] existence by a motion to dismiss for lack of jurisdiction over the subject matter, pursuant to Federal Rule of Civil Procedure 12(b)(1)."). A Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

As the party claiming subject matter jurisdiction, Chalk has the burden of establishing her standing to sue. *See Mirant Potomac River, LLC v. E.P.A.*, 577 F.3d 223, 226 (4th Cir. 2009). A plaintiff's standing is tested at the time the complaint is filed. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 189 (2000) ("The requisite personal interest that

must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (citations omitted); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 570 n. 5 (1992) (plurality opinion) ("[S]tanding is to be determined as of the commencement of suit."); *cf. Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.").

A plaintiff has standing if (1) he or she has suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury is caused by the conduct of the defendant; and (3) it is "likely, as opposed to merely speculative," that the injury will be redressed by a favorable decision of the Court. *Lujan*, 504 U.S. at 560-61 (internal citations omitted).

**a. Standing**

Chalk's Complaint contains five counts. The first three counts allege that PNC violated the MCPA, the MCDCA, and the MMFPA by sending NOITFs representing that PNC, not Freddie Mac, was the secured party for the mortgage loan. Count Four seeks a temporary and permanent injunction preventing PNC from filing a foreclosure action against Chalk. Count Five seeks a declaration that the Deed of Trust for Chalk's property cannot be enforced through a power of sale.[1] In support of that declaratory relief, Chalk contends that her Deed of Trust names a corporate trustee, and that the Maryland statute permitting a power of sale requires action by a natural person whose name appears in the Deed of Trust.

PNC contends that Chalk lacks standing to bring the claims in the Complaint because the 2010 foreclosure action against the Chalk property was dismissed. No new foreclosure action

---

[1] A power of sale is a type of foreclosure allowing the mortgage holder to sell the property privately, with limited judicial involvement. *See Anderson v. Burson,* 424 Md. 232, 246 n.14 (2011).

had been filed as of the date Chalk filed the Complaint. However, Chalk's claims under the MCPA, the MCDCA, and the MMFPA are premised on the NOITFs naming the allegedly incorrect secured party. Chalk alleges that she suffered damages, including but not limited to legal fees and expenses and emotional damages, as a result of those allegedly invalid NOITFs and the 2010 foreclosure action. *See, e.g., N.B.S., Inc. v. Green*, 409 Md. 528, 541 (2009) (holding that "noneconomic damages" including pain and suffering are available under the MCPA); Md. Code Ann., Com. Law § 14-203 (providing for recovery for damages for emotional distress under MCDCA). If Chalk in fact sustained such emotional damages and legal fees, those damages would not have been erased by the eventual dismissal of the foreclosure action. As a result, because Chalk has alleged viable injury in fact caused by PNC's actions, Chalk has standing to bring the statutory claims she asserts in Counts One, Two, and Three.

However, Counts Four and Five do not survive an analysis of Chalk's standing. Because no foreclosure action was pending at the time Chalk's Complaint was filed, Chalk then faced no actual or imminent "injury in fact" from any foreclosure premised on an allegedly defective NOITF. *See Friends of the Earth, Inc.,* 528 U.S. at 180 (holding that "injury in fact" must be "actual or imminent, not conjectural or hypothetical") (*citing Lujan*, 504 U.S. at 560-61). Chalk has no standing to seek a temporary or permanent injunction to prevent an action that may or may not ever be taken by PNC.

Count Five meets a similar fate. When Chalk filed her Complaint, there was no existing effort to enforce her deed of trust through a power of sale foreclosure. Essentially, Chalk seeks an advisory opinion as to whether any future attempt at power of sale foreclosure would be valid under Maryland law. That is not the purpose of a declaratory judgment. *See Coffman v. Breeze Corps*., 323 U.S. 316, 324 (1945) ("The declaratory judgment procedure . . . may not be made

5

the medium for securing an advisory opinion in a controversy which has not arisen.")[2]  PNC's Motion to Dismiss will be granted as to Counts Four and Five.

### b. Motion to Dismiss for Failure to State a Claim

Chalk contends that PNC violated three different Maryland statutes: (1) the MCPA, which prohibits making false or misleading statements to consumers; (2) the MCDCA, which prohibits asserting a legal claim with knowledge that the right to do so does not exist; and (3) the MMFPA, which prohibits making deliberate misstatements, misrepresentations, and omissions during the mortgage lending process. The factual predicate Chalk cites for each of those claims is that PNC's NOITFs contained a misrepresentation that PNC was the "secured party," although Freddie Mac was the actual owner of the mortgage loan.  Thus, Chalk reasons, PNC's 2010 foreclosure suit was invalid because it relied upon an intentionally misleading NOITF.

PNC contests Chalk's premise, arguing that Md. Rule 14-202(q) defines "secured party" to include (1) the holder of the promissory note secured by the deed of trust, and (2) the assignee or successor in interest to an owner.  PNC asserts that it meets both of those definitions and that the NOITFs properly identified PNC as the secured party.  Chalk responds that the definition of "secured party" in Md. Rule 14-202(q) only applies to Chapter 14 of the Maryland Rules, and is inapplicable to the statutory requirements governing NOITFs.

The potential application of the definition in Maryland Rule 14-202(q) to the statutory provisions governing NOITFs is a question of law implicating important issues of state public policy.  Pursuant to the Maryland Uniform Certification of Questions of Law Act, the Maryland Court of Appeals is permitted to answer a question of law certified to it by a court of the United States "if the answer may be determinative of an issue in pending litigation in the certifying court

---

[2]  This issue recently was decided adversely to the plaintiff in *Svrcek v. Rosenberg*, 203 Md. App. 705 (2012).  Mr. Svrcek is seeking review by the Court of Appeals.

and there is no controlling appellate decision, constitutional provision, or statute of this State." Md. Code Ann, Cts. & Jud. Proc. § 12-603. In this case, however, there is no need to certify the question to the Maryland Court of Appeals. This precise issue was already argued to the Maryland Court of Appeals on April 10, 2012, in the similar case of *Camille L. Shepherd v. John S. Burson, et al.*, September Term 2011 Case No. 110. I therefore decline to rule on PNC's Motion to Dismiss Counts One, Two and Three at this time. The motion will be denied without prejudice to PNC refiling its motion to dismiss, if appropriate, after the Maryland Court of Appeals issues its ruling in the *Shepherd* case.

      A separate order follows.


Dated: July 16, 2012                                                                                        /s/
                                                                                        Catherine C. Blake
                                                                                        United States District Judge